Wood *v.* Kuper.

## WOOD *v.* KUPER.

[No. 18,625. Filed June 7, 1898.]

ADVERSE POSSESSION.—*Survey.—Estoppel.— Quieting Title.*—Adverse possession of land, continued for twenty years, passes the title thereof to the occupant, in fee simple, as completely as though he had acquired it from the true owner by conveyance, and the fact that such owner submitted to a survey of 'such lands will not estop him from asserting title to the land under his claim of adverse possession, irrespective of the survey, when the time for appeal therefrom has not expired. *pp. 624, 625.*

QUIETING TITLE.—*Survey.—Consent to Making Survey.—Effect Of.*— The fact that a person holding land by adverse possession consented to a survey thereof will not estop the holder from asserting title to the land, regardless of the survey, as the only effect of such consent was to dispense with the notice required by statute. *p. 625.*

From the Dubois Circuit Court. *Affirmed.*

*Cox & Tieman,* for appellant.

*Bretz & McFall,* for appellee.

JORDAN, J.—Appellee sued appellant to quiet his title to the strip of real estate particularly described in his complaint by metes and bounds; being a part of the west half of the southeast quarter, section 32, township 3, south, range 5, west, situated in Dubois county, Indiana. Appellant answered by a general denial, and also filed a cross-complaint whereby she sought to quiet her alleged title to the land in controversy. The case was submitted to the court, and, after hearing the evidence, there was a finding that appellee

was the owner of the realty; and, over appellant's motion for a new trial, judgment was rendered accordingly, quieting appellee's title.

The controversy between the parties to this appeal is whether the appellee owns up to what is claimed to be the north line between his land and that of appellant, or whether the land which he owned only extends to a line run by the county surveyor in March, 1895. The evidence shows that about 1837 the county surveyor established a corner, and marked it by a stone, and that this monument, together with an old fence, was recognized by the respective owners of the land as marking the true boundary line. For thirty years and over, prior to the commencement of this action, this fence, it appears, was considered as the dividing line by appellee and his immediate and remote grantors; and they have been in open, continuous and notorious possession of the real estate in question, under a claim of title during said period, and cultivated and improved the land up to the line in dispute; and the appellee, when he purchased from his immediate grantor, seems to have been informed and understood that his purchase extended to this line. It is not controverted but what the evidence shows that appellee had, prior to the survey hereafter mentioned, acquired an absolute title to the land, by reason of adverse possession. In February, 1895, a dispute arose in respect to the boundary line between the parties to this action; and they, together with other owners of land in section thirty-two, consented, in writing, that the county surveyor should run lines and establish corners in said section at his earliest convenience. Consequently, in March following, the county surveyor established corners and ran a line. This line was located by the surveyor south of the old fence line which had been, as heretofore said, recognized as the

boundary between the lands owned by the parties to this action. The correctness of the corners and line so established by the surveyor was, it seems, controverted by the appellee; and on the 8th day of April, 1896, he instituted this action to settle the question of title.

The insistence of counsel for appellant is that appellee, by failing to appeal from the survey made in 1895, is bound and estopped thereby from asserting title to the land under his claim of adverse possession. This contention is not tenable. It is true that in case of a statutory survey it is in effect provided by section 8030, Burns' R. S. 1894 (5955, R. S. 1881); that such survey, as between the parties, shall be *prima facie* evidence in favor of the corners and lines so established during the three years allowed for appeal. *Sinn* v. *King*, 131 Ind. 183. But certainly the survey in question, under the circumstances, during the period allowed for an appeal therefrom by the appellee, could not serve to defeat the title held and acquired by him through adverse possession. *Cleveland* v. *Obenchain* 107 Ind. 591; *Riggs* v. *Riley,* 113 Ind. 208; *Russell* v. *Senior,* 118 Ind. 520.

Adverse possession of land, continued for twenty years, passes the title thereof to the occupant, in fee simple, as completely as though he had acquired it from the true owner by a conveyance at the time. of the commencement of his possession. *Wilson* v. *Campbell,* 119 Ind. 286. It is true, a survey establishes the lines and corners as determined by it; but it neither passes title nor settles the question thereof to the land surveyed. *Russell* v. *Senior, supra.* In *Cleveland* v. *Obenchain, supra,* it is said : "A landowner who submits to a survey does not by so doing lose any of his land. In submitting to the survey he does not surrender any valid title that he may have, no matter how

Cincinnati, etc., R. R. Co. v. Cregor, Administratrix.

it may have been acquired. In not objecting to the survey he does not put himself in the position of surrendering his land, or any part of it."

Some stress is laid by appellant upon the fact that appellee gave his written consent that a survey might be made. All the effect that this consent had, was to dispense with the notice required by the statute. See section 8025, Burns' R. S. 1894 (5951, R. S. 1881). The judgment, upon the evidence, under the law, is a correct result, and is therefore affirmed.