PFETTSCHER ET AL. *v.* BUENTE ET UX.

[No. 17,729. Filed March 5, 1948.]

*William J. Folz,* of Evansville, attorney for appellants.

*Edwin C. Henning,* of Evansville, attorney for appellees.

Royse, J.—This case arises out of a dispute between appellants and appellees as to the location of the boundary line dividing property owned by said parties in Vanderburgh County. The record discloses the first remote common grantor of the property here involved was one John Verwaen who, in January, 1854, acquired the following described real estate:

> "Beginning at the northwest corner of the southwest quarter of the northeast quarter of Section 15, township 6 south, range 11 west, and running thence east 16 chains to the center of road leading from Evansville to New Harmony, thence south along the center of said road 12 chains, thence west 16 chains, thence north 12 chains to the place of beginning, containing 19.20 acres."

On January 15, 1857, said Verwaen and his wife conveyed by warranty deed the property to Adolph Schroeder. On October 20, 1860, said Schroeder and his wife conveyed by warranty deed the property now owned by appellants to Agatha Rosina Grimm. The description of the property conveyed was as follows:

> "Beginning at the northwest corner of the southwest quarter of the northeast quarter of Section 15, township 6 south, range 11 west, and running from thence east 16 chains to the center of the road leading from Evansville to New Harmony, thence south along the center of said road, 3.05 chains, thence west 16 chains, thence north 3.05 chains, to the place of beginning, containing 5 acres of land."

On the 4th day of March, 1861, pursuant to the provisions of 1 R. S. 1852, ch. 103, § 49-3311, Burns' 1933, the county surveyor ran the lines and established the corners to all of the above mentioned real estate. No appeal was taken from this survey. This survey is found in Plat Book B, p. 198, 199, of the Vanderburgh County Surveyor's office. At the time of the survey the prop-

erty now owned by appellants was shown on the survey as being in the name of Rosina Grimm. The survey shows the figure 15 at the northwest corner of this tract, 21 at the northeast corner, 22 at the southeast corner, and 14 at the southwest corner. The distance from the northwest corner to the northeast corner is 14.65 chains. The distance from the northeast corner to the southeast corner shows 2.67 chains plus .78 chains. This measurement indicated a deflection in the road, thus the total distance from the northeast to the southeast corner was 3.45 chains—or 227.7 feet. It was estimated that if the distance from the northeast corner to the southeast corner had been measured by a straight line it would have been approximately 5.7 feet less. The surveyor's footnotes indicate that in surveying this tract he was surveying a five-acre tract. They also show the surveyor placed a stone at the northwest and southwest corners of said tract. The record discloses several conveyances of this tract. The same description as that above set out was used until a conveyance made August 25, 1869, which contained the words "containing five acres more or less" instead of "containing five acres." Subsequent conveyances used this latter description. In 1909 a lot not here involved was sold off this tract. On February 19, 1920, the appellants Pfettscher acquired this property by warranty deed, the description in that conveyance being as follows:

> "5 acres off of the north end of the southwest quarter of the northeast quarter of Section 15, township 6, range 11, excepting, however, a lot 70 feet frontage and 150 feet in length in the southeast corner of the above described tract, etc."

From the record we trace appellees' title as follows: On November 23, 1864, Schroeder, their remote grantor, conveyed the following described real estate:

"The north half of a tract of 14 acres described as follows, to-wit: Beginning 3.05 chains south from the northwest corner of the southwest quarter of the northeast quarter of Section 15, township 6 south, range 11 west, running from thence east 16 chains, then south 8.95 chains, thence west 16 chains, and from thence north 8.95 chains to the place of beginning, containing 7 acres of land and being that tract which adjoins a five-acre tract of land sold by said parties of the first part on October 20, 1860, to Agatha Rosina Grimm, as recorded in Record of Deeds of said County, Book 9, pages 582 & 583."

The foregoing description was used in several transfers of this property until November 30, 1915, when a conveyance was made with the following description:

"A part of the north half of a part of the southwest quarter of the northeast quarter of Section 15, town 6 south, range 11 west, commencing on the west line of said quarter quarter section 3.05 chains south of the northwest corner of said quarter quarter section, thence east 13.05 chains, thence south 4.47 chains, to an iron pin; thence west 13.05 chains to a stone in the west line of said quarter section, thence along the west line to the place of beginning, together with a strip of land 12 feet wide to be used as a roadway, leading from the above described tract to New Harmony Road, and described as follows, to-wit:— beginning at a point in the center of the New Harmony Road, said point being 3.05 chains south, thence 16 chains east of the northwest corner of the above described quarter section, and proceeding thence south along the center of said New Harmony Road 12 feet, thence west 2.95 chains to the east line of the above described tract, thence north along said east line 12 feet to the north line of the above described tract, thence east along said north line to the place of beginning."

On March 15, 1931, this description was used in conveying this property to the appellee Buente. On July

3, 1936, appellee Buente entered into a contract to sell said real estate to the appellees Ray.

In July, 1944, appellees commenced this action by their complaint in two paragraphs against appellants by which they seek to quiet their title to a strip of ground approximately 21 feet along the north boundary of their property. Appellants answered this complaint in seven paragraphs. The trial court sustained appellees' demurrer to the first three paragraphs of answer. The fourth, fifth and sixth paragraphs of answer pleaded the six, fifteen and twenty-year statutes of limitations. The seventh pleaded adverse possession for more than twenty years. Appellants also filed a cross-complaint seeking to have their title quieted to the disputed strip of land. Trial to the court resulted in finding and judgment in favor of appellees. The only error assigned here is the overruling of appellants' motion for a new trial. The specifications of this motion question the sufficiency of the evidence and the legality of the decision of the trial court.

Appellants contend a survey of land made by a county surveyor pursuant to the statute, *supra*, unless appealed from, is conclusive evidence of such corners and lines; and where land owners agree upon a line and procure it to be established by a survey, such owners and their privies are estopped from disputing the correctness thereof.

In the case of *Herbst* v. *Smith* (1880), 71 Ind. 44, the Supreme Court, in construing this statute, *supra*, said, at page 48:

> "It is clear to our minds, that the Legislature intended that, when a survey should be made in accordance with that statute, it should be conclusive unless appealed from as therein provided for.
>
> "There would not only be little necessity or use of an appeal, but there would be little certainty

as to corners, lines and boundaries, if the question could be reopened as often as a new surveyor might come in, or as often as any of the landholders affected by the survey might desire to have the question reopened. The statute says, 'The survey of such surveyor shall be *prima facie* evidence in favor of the corners so established, and the .lines so run, but an appeal may be taken,' etc. The object of the statute was, as we think, to make such survey *prima facie* evidence, etc., during the time in which an appeal could be taken, and perhaps pending an appeal when taken; but, where no appeal is taken, the survey becomes, after the time limited therefor, conclusive. Otherwise, such survey settles nothing that may not, upon a new survey and without any appeal, be unsettled. A new survey may doubtless be had, not for the purpose of establishing the corners, lines or boundaries, as an original survey; but for the purpose of re-locating or perpetuating the corners, lines or boundaries established by such original survey, where they have become obscured or lost."

This language was quoted with approval in *Grover* v. *Paddock* (1882), 84 Ind. 244, 247. See also, *Hunter* v. *Eichel* (1884), 100 Ind. 463, 465.

But appellee asserts the case of *Spacy* v. *Evans* (1880), 152 Ind. 431, 52 N. E. 605, holds that notwithstanding such a survey is unappealed from, that is nothing more than *prima facie* evidence in favor of the corners established by the original survey. There is language in the opinion of that case which supports this assertion. However, the opinion in that case was not referring to the original survey but to a fourth survey made at the instance of the appellee therein.

In the case of *Wilson* v. *Powell* (1906), 37 Ind. App. 44, 75 N. E. 611, (transfer denied), this court held, where a survey under the statute, *supra,* was unappealed from it was conclusive. We said in that case:

"Where the line lies and where its corners are questions which the surveyor, on account of his superior facilities for so doing, may be called upon officially to determine. What the lines and corners are is a matter of law, which courts alone can declare. *Ayres v. Huddleston* (1903), 30 Ind. App. 242. In instances where the party in possession has held beyond the lines specified in his deed until such possession has ripened into title, it has uniformly been held that a survey does not operate to deprive him of the title thus acquired. *Logsdon* v. *Dingg* (1904), 32 Ind. App. 158; *Webb* v. *Rhodes* (1902), 28 Ind. App. 393. . . . The language used in *Spacy* v. *Evans* (1899), 152 Ind. 431, has manifest relation to cases in which the question of title is at issue."

To the same effect see: *Chitwood* v. *Garner* (1917), 65 Ind. App. 290, 293, 117 N. E. 211; *Robinson* v. *Rice* (1926), 85 Ind. App. 483, 154 N. E. 391.

We hold the lines made and the corners established by the survey made March 4, 1861, are conclusive and binding on the parties hereto.

The crux of this dispute is whether the north boundary of appellees' tract begins at a point 3.05 chains south of the northwest corner of the southwest quarter of the northeast quarter of Section 15, township 6 south, range 11 west, or at a point 222 feet south of said corner.

Appellee employed a civil engineer to make a plat of the property involved in this action. His plat showed a surveyor's stone in place at the northwest corner and another such stone 222 feet south of the stone in the northwest corner; that at the point where this south stone was located he found an old fence. The evidence is uncontradicted that for a period of more than fifty years prior to the commencement of this action there was a fence running east from the surveyor's stone in the southwest corner of appellants' tract, which stone

was 222 feet south of the north line of said tract. It is further shown by the uncontradicted evidence that for at least the same period of time appellants and their predecessors used and occupied this land for pasture and gardening purposes up to said fence line. It is also shown by the evidence that appellants' claim to this ground was never questioned until this action was commenced.

The evidence is not sufficient to sustain the decision of the trial court, which is contrary to law.

In view of the conclusion we have reached it is not necessary to pass on other questions raised by appellant.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 77 N. E. 2d 765.